AMELIA GORMAN, as Executrix, etc., of JOHN J. GORMAN, Deceased, Respondent, v. DANIEL E. FINN and Others, Appellants. (Actions Nos. 1 and 2.)

*Bond of a deputy sheriff — liability thereunder to the sheriff for claims paid by him for the services of keepers employed by the deputy without authority.*

The condition in a bond given by a deputy sheriff, that the obligors will "save and keep harmless and indemnified the said John J. Gorman, sheriff, * * * from and against all issues, fines, demands, damages, costs, liabilities and charges whatsoever, hereafter to be produced, imposed, prosecuted, demanded or demandable of or against the said John J. Gorman as sheriff * * * for or by reason of any other neglect of any kind whatsoever of the said Daniel E. Finn in executing wrongfully or neglecting to execute the said office of deputy sheriff," covers moneys paid by the sheriff's executrix in satisfaction of judgments recovered against the sheriff for the services of keepers employed by the deputy sheriff, without the authority of the sheriff or his attorney, to safeguard property seized under an execution, which services were rendered after the property had been delivered, pursuant to an order of the court, to a receiver of the property of the judgment debtor, appointed subsequent to the levy.

APPEAL by the defendants, Daniel E. Finn and others, from two several judgments of the Supreme Court in favor of the plaintiff, each entered in the office of the clerk of the county of New York on the 23d day of December, 1899, upon the verdict of a jury, and also from two several orders entered in said clerk's office on the 19th day of January, 1900, denying the defendants' motion in each case for a new trial made upon the minutes.

*T. B. Chancellor*, for the appellants.

*John T. Canavan*, for the respondent.

HATCH, J.:

These two actions by the same plaintiff against the same defendants were tried together upon stipulation, and the appeals from the judgments in both cases are in one record.

The actions were brought to recover upon the official bond of the defendant Finn, given upon his appointment as deputy sheriff for the city and county of New York, by John J. Gorman, plaintiff's testator, then sheriff, to recover damages for alleged breaches of the conditions of the same. The defendants Cleary and Crusius are the sureties on said bond.

Finn was appointed a deputy sheriff in or about January, 1891, and on April 6, 1893, there was placed in his hands as such deputy two executions against the property of the F. J. Kaldenberg Company, a corporation, issued in actions brought by Charles O. Waite against the corporation upon judgments rendered therein. Finn, in the execution of such process, levied upon the property of the judgment debtor situated in a building in New York city, and employed two keepers — as claimed by him by authority and direction of the sheriff or his attorney — and put them in charge of the property.

On the next day, April 7, 1893, a temporary receiver of the judgment debtor was appointed by the Supreme Court in proceedings for the dissolution of the corporation. The receiver qualified and went to the premises where the property levied upon was situated, and claimed possession of the property, to the exclusion of the defendant Finn. Finn, however, still claimed possession of the property by virtue of his levy, and the receiver applied to the Supreme Court on April 29, 1893, and obtained an injunction restraining the sheriff and his deputies from interfering with the receiver's possession of the property in question, or with his continuing and managing the business of the corporation. This injunction was served upon the defendant Finn on or about April 30, 1893. It does not appear that the defendant Finn attempted to disobey this injunction by interfering with the receiver in his possession or management of the property, but about July 11, 1893, while the receiver was still in possession and carrying on the business, and while the injunction so restraining him from interfering was still operative, Finn employed two men, Hanna and Moyer, as keepers of said property, and, as appears from the testimony, continued their employment as such until about November 1, 1893, when they were discharged. Defendant Finn refused to pay for the services so rendered, whereupon each sued the sheriff, John J. Gorman, therefor and recovered judgments ; the said Hanna for $380.28, and the said Moyer for $420.99. These judgments being liens upon the real estate of the plaintiff's testator she was obliged to and did pay them, with interest, and then brought these actions against the defendants to recover the amount so paid, upon the theory that the acts of Finn in employing and appointing Hanna and Moyer as keepers of the property were a violation of the conditions of his bond as deputy sheriff.

The defense was that the employment and appointment was by :and with the authority and direction of the sheriff, in person and by his attorney, and that, therefore, such act was not a breach of the condition of his bond, and that, if not so authorized, the employment of the keepers was not unnecessary or wrongful, and was not .a negligent or wrongful execution of the duties of his office of deputy.

The question whether or not the keepers were appointed by authority or direction of the sheriff or his attorney, was sharply contested at the trial, was submitted to the jury and it has found for the plaintiff upon that issue. Unless some error was committed in the charge the judgments cannot be disturbed upon that question.

It is urged by the appellants that the charge of the court upon this branch of the case presents reversible error. The jury was instructed that " if no such direction or approval was given to Daniel E. Finn by the sheriff's attorney or counsel, then, inasmuch as there was no fair necessity for incurring the large expense for such keepers, in place of the former keepers, while the receiver was in actual possession under appointment by the court, the plaintiff is entitled to a verdict."

It is not necessary for us now to decide whether this was error of law or not, for the reason that no exception was taken to the charge in this respect. But we may say that it is not clear that the charge upon this point was reversible error if exception had been taken. Under most circumstances it would be a question of fact for the jury to determine whether or not, in the absence of authority from the sheriff, there was a " fair necessity for incurring the large expense for such keepers," etc., but, under the circumstances disclosed by the testimony in this case, it is doubted if this would be so.

Defendant's counsel requested the court to charge that " it was necessary in order to maintain the levy, for Mr. Finn, or somebody representing him, to remain in charge." In response to this request the court said : " It could have been done by arrangement with the receiver. All they had to do was to ask the receiver to give them a writing that the receiver would maintain possession subject to any right that the sheriff might have, and thereupon the keepers became

unnecessary." This was duly excepted to and is urged as ground of reversal. What was said by the court amounted to a denial of the request, but we are of the opinion that this was not error. As matter of law it was not necessary that keepers should be appointed in order to maintain the levy. Counsel does not call our attention to any authority in support of such position. It is well settled, however, that execution creditors do not lose their rights by the appointment of a receiver after the lien of the execution has attached. In this instance the receiver took title to the property of the corporation as it existed at the date of his appointment. That is, subject to the lien of any valid levy or other lien upon it. From the moment of his appointment he became an officer of the court, and from that time the property was *in custodia legis,* and the court had not only the power, but it became its duty to protect the rights of those interested in it. The appointment of a receiver could not work the destruction of vested rights. (*Matter of Christian Jensen Co.,* 128 N. Y. 550, 553; *Matter of Lewis & Fowler Mfg. Co.,* 89 Hun, 208; *Walling* v. *Miller,* 108 N. Y. 173.) In the last case cited the sheriff made a levy on May twelfth, and the receiver was appointed and qualified on May fourteenth and ousted the sheriff. The court said: The receiver " took possession of the property and thereafter it was, in theory of law, in the possession and custody of the court, and the sheriff had no right to interfere with it by virtue of his lien under the execution in his hands. The lien of the execution was not destroyed by the appointment of a receiver, but the rights and interests of all parties in the property were thereafter to be adjusted by the court which appointed the receiver and the property could not be taken out of the possession of the receiver and sold upon the execution without leave of the court." This being the rule of law generally applicable to these facts, the deputy could not justify the appointment of keepers on the theory that it was necessary to maintain his execution lien, and in addition to this he had been expressly enjoined by the court from any interference. It thus appears that the defendants were not entitled to have the jury instructed as requested, and the refusal so to do was not error.

That the acts of the defendant Finn, if unnecessary or wrongful or negligent, were a breach of the conditions of the bond upon which

the actions are based, there can be no doubt.    This bond provides in its condition, among other things, that the obligors shall " save and keep harmless and indemnified the said John J. Gorman, sheriff, as aforesaid, * * * touching and concerning the execution and return of all such * * * judgments, process, writs or warrants of what nature soever, as are or shall be delivered to the sheriff ; * * * and shall also save and keep harmless and indemnified the said John J. Gorman * * * from and against all issues, fines, demands, damages, costs, liabilities and charges whatsoever, hereafter to be produced, imposed, prosecuted, demanded or demandable of or against the said John J. Gorman, as sheriff as aforesaid, his heirs, executors or administrators, or his or their goods or chattels, lands or tenements, for or by reason of any other neglect of any kind whatsoever of the said Daniel E. Finn in executing wrongfully or neglecting to execute the said office of deputy sheriff for the said city and county during the time aforesaid."

These provisions clearly cover the alleged acts of the defendant Finn in these cases.    Judgments have been regularly obtained against the said Gorman for the services alleged to have been rendered by the men appointed by Finn ; the plaintiff, as his personal representative, has been obliged to pay the same in order to remove the liens upon the property of the testator created thereby.    And the jury in these cases has found in favor of the plaintiff upon all the issues.

One other question remains to be considered.    An error was committed in the instructions to the jury as to the amount which plaintiff was entitled to recover upon the Moyer judgment.

The court instructed the jury that the recovery in that case if they found for the plaintiff should be $677.25.    This sum is greater than the amount of the judgment and interest, and there is no proof justifying such a recovery.    The judgment was entered May 19, 1894, for $420.09.    It was paid by plaintiff on the 6th of January, 1896, the witness who paid it testifying that he paid $547.85 ; and this sum, with interest to the date of the trial, amounts to $677.25, the amount for which judgment was directed.    But the sum claimed to have been paid is in excess of the amount due on the judgment at the date of payment.    The amount then due was $462.03.    The most plaintiff could recover would be the amount due on the judg-

FIRST DEPARTMENT, DECEMBER TERM, 1900.        [Vol. 56.

ment at the time she paid it, with interest to the date of trial. The trial was had and judgment rendered on the 20th day of December, 1899. The interest from January 6, 1896, to that date would be $109.72, making the amount for which judgment should have been rendered $571.75. This error does not make a reversal of the judgment necessary; it may be corrected here.

After a careful consideration of all the questions presented by the record and argument, we have reached the conclusion that the judgment in action called No. 1 should be affirmed, with costs to the respondent.

That the judgment in action No. 2 should be modified by inserting the sum of $571.03 as the amount of the recovery in the place and stead of $677.25, and as so modified the same should be affirmed, without costs to either party.

VAN BRUNT, P. J., RUMSEY, PATTERSON and INGRAHAM, JJ., concurred.

In action No. 1, judgment affirmed, with costs to the respondent.

In action No. 2, judgment modified by inserting the sum of $571.03 as the amount of the recovery in the place and stead of $677.25, and as so modified affirmed, without costs to either party.